The first matter before us today is 20-9595 Takwi v. Garland, and we are ready to proceed whenever you are, Ms. Witt. Thank you, and may it please the Court, Jesse Howard Witt for Petitioner and the Kemp Chapter Nelvis Takwi. I'd like to reserve five minutes for rebuttal. As the Courts will know from the brief, this is an immigration case. Mr. Takwi fled his native Cameroon after the military persecuted and tortured him based on his political activity. An immigration judge denied his application for asylum and withholding of removal based on perceived inconsistencies between Mr. Takwi's testimony and an affidavit from his older brother, Elvis, and the BIA affirmed. If time allows, I want to address four points today, one, whether the lack of an explicit adverse credibility determination required the BIA to apply a rebuttable presumption of credibility, two, whether substantial evidence supports the BIA's ruling, three, whether the BIA abused its discretion in denying a motion to remand to consider corroborating evidence, and four, whether a competency evaluation was necessary. Mr. Witt, the IJ added some underlined language to the transcript of her oral decision after she issued it, and you argue that this should be disregarded because it was substantive in nature and the BIA practice manual only allows for minor sort of ministerial corrections. Did you make this argument to the BIA? I do not believe that was raised in the BIA, however, we do believe that that should have been taken into consideration, even if it was not specifically addressed there. The BIA obviously knows its own rules, and to put this much weight on a provision that really is only intended to apply to clerical errors, we think is a essentially plain error. And did you make that argument in your appellate? You raised it in this court. I was not counsel in the BIA, but we did identify that issue in our opening brief in this court as, and again, I don't believe it was discussed in the opening brief in the BIA. But you didn't argue plain error here, did you? No, we noted it as a potential issue, and we raised it so the court was aware of it. We do think that that was improper, because it wasn't discussed in the BIA appeal, we didn't focus on it in our opening brief in this court, but I think that is a structural issue here that should be given consideration, particularly since so much of this case turns on this ambiguous sentence. How do we determine whether a credibility determination is explicit or implicit? Well, there's some guidance that we have here, and the government filed two supplemental cases last week that touch on this. One is Garland v. Ming Dai, which emphasizes, rejects the Ninth Circuit policy, but emphasizes that the rebuttable presumption does kick in. The second case, though, the Molina-Diaz v. Wilkinson, goes more to the question of what is an explicit determination, and the court says there do not have to be specific magic words, but there has to be at least some sort of no uncertain terms, I think is the language they use, indicating whether the IJ finds that an applicant's testimony either is or is not credible, and comments about doubts, exaggerations, or even disbelief are not sufficient. And although this was a recent First Circuit case, it relied on the Seventh Circuit's decision in Obambi v. Gonzalez, which has been cited in the Tenth Circuit, at least in an unpublished case, Favre v. Gonzalez. We cited both of those in our opening brief. Mr. Wright, is it your, I'm sorry to interrupt you, is it your contention that the immigration judge didn't make a credibility determination, but really decided an issue of persuasiveness, a burden of proof, is that your position? Well, it's honestly unclear, and there seems to be a sort of implicit suggestion that she did not find the witness credible, but she never quite comes out and says, I find this witness to be not credible. She makes a statement, and again, it gets into the, in her edited content, which should only be used for clerical errors, she adds a comment that certain evidence she had found to be not credible or alternatively persuasive. But it's an ambiguous statement, because she doesn't say if she's finding it not credible or not persuasive. She doesn't indicate if she found portions of the testimony to be lacking in credibility, but other portions to be credible. And this is where the Ming Dai case is, I think, instructive, because Justice Gorsuch in his trademark concise style gives us an example of a car crash case. A jury might find a witness to be credible but not persuasive. But they're different concepts, and although it might not matter in a jury case, it's very important in an immigration dispute, because the Congress has said that is the bright line that determines what presumption applies in the BIA appeal. And here, there was a comment that was ambiguous, it's not clear if she's talking about persuasion or credibility or some combination of them, and in that instance, because there was not an explicitly made adverse credibility determination, the BIA was required under the code to apply a rebuttable presumption of credibility, and they didn't do that, and that alone warrants remand and reversal. What if the IJ made an alternative determination, and that is that she said the petitioner is not credible, or in the alternative, is not persuasive? Is that an explicit determination of lack of credibility? I would say no, because it leaves open the possibility that she's relying primarily on persuasiveness or that it's a combination of the two. And the significance there is that dictates, again, what the BIA has to do with the case, because when the BIA performs its own agency review, it has to view it through the lens of the appropriate presumptions, and that does not satisfy the code, and in that instance, when the BIA performed its review, it is obligated to give a rebuttable presumption of credibility, which again, they did not do here. Mr. Witt, what is our standard of review for just the finding itself of an explicit credibility determination? So the BIA here did, in fact, conclude that the IJ had made an explicit credibility determination. How do we review that finding? I believe that would be de novo because it is a question of law. It's a legal interpretation of what the IJ put in her written or transcribed findings. And whereas many of the factual findings are subject to clear error or other discretionary review, this particular finding should be reviewed de novo because it is a straightforward question of law. Is this or is this not an explicit determination? If you look at her, if we take the added statements that were added after the fact and include them in our analysis for whatever reason, maybe waiver, if you look at one of the last is based on the same set of facts and circumstance the court found not to be credible or alternatively persuasive. That sounds to me like the IJ at least thought there had been a determination both on persuasiveness and on credibility in the prior portions of the ruling. That's one interpretation, certainly, but that's the problem here is it's not clear which one she's going for. I don't know what you mean it's one interpretation. What's the other interpretation of what I just read? I think there's two issues there. One is as you identified, Judge, this seems to be suggesting there was some prior finding that just doesn't exist in the record. If it's there, no one has found it, neither our side nor the government. So that's one problem there is it's not clear what she's actually talking about. But with regard to your specific question, how do we interpret this? It could be both, but certainly in civil litigation, a court may say that this matter has been alternately proven this way or perhaps this way and not ultimately reach the question of which grounds apply because there might be some evidence of both and a court might not decide which ground is actually there. And again, we really just don't know what she meant by that. It certainly suggests that she was leaning towards finding a lack of credibility, but she never quite goes there. And as in cases like Melina Diaz v. Gonzales. Well, if you read it in combination with her prior statement, even if the court were to stop short of finding that respondent's testimony was not credible, I mean, you know, the tense is subjective, which suggests that, in fact, the court did find respondent's testimony was not credible. Now, it could be clearer, but don't we read the whole thing together and make an assessment whether it's de novo? We're looking at trying to figure out whether there was a determination of credibility. I think it certainly seems sort of implied there. But again, the code distinguishes between implicit and explicit determinations. And in fact, in the government's brief, they make the similar arguments saying, well, she wouldn't have said this if she didn't mean that or if she wasn't thinking this. And I think absolutely one could argue that it was implicit, but it's not explicit, which is where the Congress has drawn the line. And for you, explicit means there has to be the magic words, I find this witness not credible. I wouldn't say there has to be magic words. Obviously, the courts have said that you don't have to use a specific phrase, but it has to be something clear. And this, given as I think the amount of time the panel spent trying to understand, parse exactly what she meant there, indicates that this is not clear. It's not sufficient enough to be explicit. And that's why the BAI should have at least afforded a rebuttable presumption of credibility on appeal. And just to touch really briefly on the other issues, all of it, regardless of what presumption applied, the fundamental premise- Let me interrupt you before you go on, is that in some of the materials, there's the explicit representation that this confusion occurs with regularity in immigration cases. Why is that? I mean, when I was a trial judge, I didn't have any problem saying you lack credibility or you are credible or you are persuasive and credible. What is different about immigration cases makes it so hard? I can't answer that. I think that is a very fair question. I think the courts are right to question that. But why the immigration judges seem to prefer this equivocal language, I think is beyond the scope of this appeal. And is it fair to say that our court hasn't yet spoken on this question? Not in a published case, but there is the Bob versus Gonzalez matter, which cited the same Seventh Circuit cases that Melina Diaz relied on. So the court has spoken in an unpublished ruling and adopted that standard, but not in a published case that I'm aware of. Did it may not be presidential, but is there something in that particular opinion in its explicit articulation that makes it particularly persuasive? Well, I think it's consistent with the code language. I think the code says and explicitly made is the language that the Congress adopted that's been followed. But even that unpublished opinion doesn't tell us what explicit is. I'm not sure that's really been defined. I think the case and the Melina Diaz are the closest and the Obama are the closest cases we have. All right, I didn't mean to take a lot of your time. Go ahead. Just really quickly, all of this ultimately leads to the question of was there substantial evidence in the BIA? This is decided by the red row versus Gonzalez case. You cannot rely solely on a family member's affidavit. That's not substantial evidence that remains in effect subsequent to the Real ID Act as applied in recent cases. You didn't raise the Real ID Act until the appeal, did you? You didn't raise it before the IJ. Well, I don't think it was right before then. We commented on it just to clarify that the case law is still good. It does come up a little bit with regard to the remand, which was denied, was not denied until the BIA. It was denied simultaneously with the BIA ruling. And in that point, the portion we focused on is that there has to be some opportunity to provide. This is in the Lena Diaz too. There has to be some opportunity to provide cooperating evidence. Here the IJ wouldn't accept it at the hearing and said, here are three documents you need to provide, affidavit from your mother, from your sister, from your younger brother. All of those were done, yet the BIA refused to consider them. Finally, just to touch briefly on competency, there was a medical report in the record. The IJ's comment that it wasn't a full diagnosis is inaccurate. If that was the ruling, then she should have remanded for a full diagnosis. If there are no questions, I'll reserve one minute for rebuttal. You can have your one minute. Thank you. And Ms. Pergolesi? Very good. Good morning, your honors. May it please the court. Sarah Pergolesi for the government. To start, I'd like to focus on this explicit address credibility determination just because it took up the majority of the petitioner's time today. As Judge Murphy made note, often immigration judges' decisions are not a model of clarity. And I'd like to provide just a comment on that in that immigration judges often, as in this case, issue oral decisions at the hearing. And so often they are not as precise as one would desire them to be. But here in this case. But certainly you're not contending that this dispositive determination that that is required can be made in a written component after the oral ruling when that's only supposed to be for ministerial and clerical corrections, right? Well, as the court noted this issue, taking aside the exhaustion issue and waiver issue, I would argue that the finding even without that addition is explicit enough. In this case, the immigration judge's decision in its whole context is very clear that the immigration judge believed that she was making a credibility determination throughout the entirety of that section. Well, you know, we have a statute, I mean, section 1158, that includes that it must be explicitly made. I mean, that seems like a pretty clear indication that we don't get to say, well, it's pretty clear she maybe was trying to make a credibility. And oh, the IJ discusses inconsistencies. And I mean, that sounds to me like the IJ has to say explicitly, I find you not credible. As Judge Murphy said, you know, in a trial court, you expect that if the court is issuing an opinion, they're going to be very clear about who they believed and who they didn't believe. We don't have that here, do we? We don't have the magic words of saying, I find this person not credible. And if the court were to find that that was required, it would be stepping outside of any court to have decided whether these findings were explicit enough. Well, I, you know, whatever the words are, it has to be explicitly made according to the language of the statute. What words do you point to in the IJ's decision that are explicit in terms of a finding that Mr. Takwe lacks credibility? As the court pointed out in discussing with the Petitioner's Counsel, there are the immigration judge's comments that if she were to find the fishbowl, that's some language. And also, I think politically, the immigration judge writes and refers to the language of the statute about credibility. It's in discussion. I don't know if you're breaking up for anyone else, but you're breaking up for me. I can't. You're breaking up for me, too. Yeah, I'm sorry. I just got a notice that my connection is unstable. I just want to double check that my Wi-Fi should be okay. Is it any better now? It is better now. A little better now. Yeah. Okay. Sorry, Your Honor. I apologize. So you're saying the same language that I was talking to Mr. Witt about is what you would rely on. But yet that language was all added after the oral ruling. And you just said we don't even have to look at what was added because it's explicit without it. Excuse me. I didn't mean to interrupt. Yes, Your Honor. But I would also point to the immigration judge's use of the language from the statute itself, discussing the burden of credibility and her assertion that essentially the numerous inconsistencies did not rehabilitate. Excuse me. Sorry. I am stumbling over my words, but I want to point to the exact language. My scrolling. Yes. So I'd just like to point to page 214 where the immigration judge lays out the Real ID Act and what it says about credibility. What page of the immigration judge's decision are you referring to? Oh, excuse me. Page four. Yes, that's right. And so, again, after laying out the Real ID Act and what it says is required for a then proceeds to discuss her concerns about the respondent's testimony, specifically its inconsistencies with other record evidence, which, again, is a direct is in direct relationship to what the statute requires for credible testimony. Well, and that may be true. We may be able to form an impression or to analogize by comparing the language of the still don't know that that distinguishes it as explicit rather than implicit. I think another thing that points to the fact that it is explicit enough, I understand the court's concerns is the fact that the credibility determination, the immigration judge doesn't make alternative merits determinations. She does make an alternative finding about corroboration, but the fact that she frames it as an alternative. Again, I understand that it's not the exact words. I find this petition are not credible, but it certainly lays a discernible path that that is what the immigration judge did. Why shouldn't we look at that language? And she's in a term as if she's equivocating. She's saying, for me, it's either lack of credibility or alternatively, lack of persuasiveness. I mean, it sounds like she's being a little introspective and talking out loud. And even for her, it's not really clear. Why is that an unfair interpretation of the IJ decision? Well, again, because these are the only findings that the immigration judge made. So to suggest that alternative findings mean that neither of them are findings at all would render this decision as having no findings whatsoever. And I'm not familiar with this court or any court finding that such alternative findings mean that neither are a finding. We usually defend and discuss those alternative findings as having them both be findings. If we were to do that would really make it messy then if it's a determination that it's I mean, the two are really inconsistency. It's either lacking in persuasion in the very language that the Supreme Court used in this recent case, or it's not credible. Right. And that's sort of that messiness is cleaned up by the board's decision, because these exact arguments were made to the board that an explicit credibility determination did not exist in this case. And the board concluded that it did and affirmed just that credibility determination and not the alternative. But we have to review that assumption, right? Exactly. And we look at the IJ's decision in order to determine whether, in fact, there was an explicit credibility determination. So we don't defer to the board, do we? I don't think so. Again, there's very limited case law on this issue, but there doesn't seem to be any that is deferential in this respect. Do you agree that it's de novo? Do you agree with your colleague across the aisle that it's de novo review? Again, from the case law that I've seen, the standard of review isn't clear, but I do agree that it's very context specific. And this court should consider every sort of element of context that it has available to it. Looking at the IJ's decision. Yes, Your Honor. Yes. Okay. And if we just simply disagree with you, and we think that there was not an explicit credibility determination, do you concede that we have to remand to the BIA for them to make a new determination to see if the rebuttable presumption should be rebutted? I do, Your Honor. Absent of credibility determination, there really aren't any other legal findings that the board rests on. Would you also concede that if it's remanded for that limited purpose, that it should also be remanded to consider the new declarations or affidavits from the other family members, the younger brother, the sister, and I think the mother. Would you agree to that? Again, I think that's a good question, Your Honor. If the court disagrees that there was an explicit credibility determination, that certainly affects the motion to reopen, which was made in the context of rehabilitating credibility. So I think- Can I ask you about that? I'm sorry, I don't want to interrupt your answer to Judge Murphy's question. Well, just very quickly. So even though I think that it's still our position that that determination, that those documents didn't rehabilitate the testimony is still supported, that if this court disagreed about the credibility, it may affect that decision as well, if that makes sense. So in other words, if we remand because we find there was no explicit determination of new affidavits. Or I think just at the very least that if there's no explicit credibility determination, then the effect and importance of those new documents should be analyzed anew because they also pertain to the immigration judge's additional corroboration finding. And so, again, I think if there's no explicit credibility determination, it certainly, yes, affects that remand determination as well. Although, again, it's our position that those documents certainly don't rehabilitate the exact issue that the immigration judge, if it's found to be explicitly made, identified because they don't contain any statements from Elvis or even an explanation as to how the new documents were acquired. And what about that? You make an argument, I think, that the Real ID Act and the right to put on corroborating evidence wasn't raised before the BIA, I think. How do you, I mean, they didn't know yet they were going to have that evidence or need that evidence. So aren't you asking a lot for them to have anticipated that need and offered the corroborating evidence before there was any indication that the IJ had credibility concerns? Yes, Your Honor, and the corroboration arguments are made in the alternative in our brief because of the strength of the adverse credibility determination. And the Real ID Act, the interplay of the corroboration and credibility it affects corroboration differently whether the applicant is otherwise credible or not. And so, yes. But in this case, if we were to find that the BIA correctly determined there was an adverse credibility determination made, let's spot you on that. Isn't it possible that on a motion to remand with that finding coming down to the IJ or the BIA that Mr. Tockley would be able to satisfy his burden of proof if there was a motion to reopen was granted separate and apart from his own credibility on the strength of the evidence that he presented, which in fact was everything that the IJ had asked for, he then provided? I'm not sure, Your Honor, if I would concede that simply because if the applicant was found not credible and that finding was sustained, then his account of what happened to him is entirely in doubt. And so, those other documents relating to his personal experiences, I'm not sure if they can independently bolster his claim in that way. Well, I guess my question is more of a legal question. What you're suggesting is more of a weighing of the evidence presented. And my question is, as a matter of law, can Mr. Tockley satisfy his burden of proof on his asylum and other claims, notwithstanding an adverse credibility determination, but on the strength of the evidence that he presented, which, as I said, is exactly responsive to the evidence that the IJ had asked him to submit? That is a good question, Your Honor, and I'm trying to think through it. I believe the answer is yes. But again, I think in the ordinary case, that evidence that's submitted is more objective evidence as opposed to evidence relating to his personal claim, which in your hypothetical would have been found not to be credible. And so, I'm having trouble answering it in a way that's responsive enough, but that would be as responsive as that can be. I'm sorry. So, one way of looking at that, it could be that the petitioner was incredible in reciting how the events happened. But that doesn't negate the fact that they happened in a different fashion, which could be attested to by the new affiance, correct? I think that's right. This evidence is not entirely consistent when it comes to the accounts of the petitioner's family members and his attorney. Objectively, that is true, Your Honor. Thank you. And I am very much out of time. Thank you. You're also breaking up again, so I think we'll move to rebuttal. And you have a nap. Thank you. Thank you. 57 seconds. Thank you. Just really quickly. I don't have a case site handy. It might be a big guy, but an applicant definitely can overcome incredible testimony without the corroborating evidence. And it would be Mr. Takui's position that the materials in his motion to remand absolutely should be considered. They completely establish, address all of the issues that the IJA questioned. They provide seven different verifications of his testimony. Mr. Witt, your response to Judge Rossman's question would be yes with citations, correct? Yes. Would you file a 28-J letter referencing the cases that answer Judge Rossman's questions? And I invite the government to do the same thing. There may be cases to the contrary. There may even be a circuit split. God forbid. Okay, we can certainly do that. If I could make a final remark, the IJA had an opportunity to clean up her record. She didn't say both. She didn't say neither. She said, alternatively, that's not explicit. Elvis was not on trial. That evidence is insufficient, and we would ask that the petition be granted. Thank you. We will take this matter under advisement. We appreciate your argument today.